## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **1. Don Keenan,** | § |
| | § |
| Plaintiff, | § |
| | § |
| **v.** | § **Case No. 23-CV-1121-D** |
| | § |
| **2. The State of Oklahoma** and | § (Removed from Oklahoma County |
| **3. Todd Russ,** in his capacity as the | § Case No. CV-2023-2762) |
| Treasurer of the State of Oklahoma | § |
| | § |
| Defendants. | |

### PLAINTIFF'S MOTION FOR REMAND

Plaintiff, Don Keenan ("Mr. Keenan"), hereby moves for an order remanding this matter to state court pursuant to 28 U.S.C. § 1447(c) on the following grounds: (1) Defendant[1], Todd Russ, as the Treasurer of the State of Oklahoma ("Defendant"), waived his right to seek removal after requesting a continuance of Mr. Keenan's temporary restraining order hearing without raising the issue of removal and thereafter affirming he would appear in court for Mr. Keenan's temporary restraining order hearing set for December 15, 2023; and (2) Mr. Keenan's state-level constitutional claims are severable pursuant to 28 U.S.C. § 1441(c)(2).  In support of the same, Mr. Keenan states as follows:

---

[1] Contemporaneous with the filing of this *Motion*, Mr. Keenan is dismissing the State of Oklahoma without prejudice.  However, Mr. Keenan is doing so without waiver of his argument for remand or severance and is only filing the dismissal in this Court insofar as the District Court of Oklahoma County is presently deprived of jurisdiction.  Accordingly, Treasurer Russ, is the only named party.

## FACTUAL BACKGROUND

In 2022, Oklahoma passed an unconstitutional law, to-wit: "The Energy Discrimination Elimination Act of 2022," Okla. Stat. tit. 74, § 12001 *et seq.* (the "Act"). *See*: Plaintiff's *Motion for Temporary Restraining Order and/or Motion for Temporary Injunction*, at pp. 1-4 [Dkt. 1]. In short, the Act requires companies, including financial institutions, who do business with the state (such as banks managing state pension system funds) to affirm that they do not and will not boycott energy companies. Otherwise, the state will cease doing business with the financial institution and will divest the state's holdings from the financial institution.

Defendant is responsible for identifying companies that "boycott" oil and gas. In spite of Defendant admitting that banks like JPMorgan Chase & Co., Bank of America, BlackRock, Inc., Wells Fargo & Co., and State Street Corp. all invest billions of dollars in oil and gas, Defendant has determined that these investments are somehow insufficient and blacklisted the banks from doing business with the State of Oklahoma.[2] This unilateral and unconstitutional application of the Act will cost Oklahoma taxpayers tens of millions of dollars, at a minimum.

Accordingly, Mr. Keenan, a beneficiary of the Oklahoma Public Employees Retirement System ("OPERS"), brought this action in Oklahoma County District Court

---

[2] Well, sort of.  As noted in November 2023, while Treasurer Russ blacklisted these companies from doing business with the state, his office has applied an "exemption" so that his office may continue to contract with these companies that "boycott" oil and gas. *See*: Monies, P., Treasurer Criticizes Pension System for Taking Exemption his Office Exercised," Oklahoma Watch, https://oklahomawatch.org/2023/11/22/treasurer-criticizes-pension-system-for-taking-exemption-his-office-exercised/ (last visited 12/10/2023).

seeking a declaratory judgment and injunction preventing enforcement of the Act.  *See*: Id., at Exhibit "C."  Mr. Keenan alleges that the Act violates: (1) The First Amendment of the United States Constitution because the Act is compelled speech, viewpoint discriminatory, and content discriminatory; (2) The Due Process clauses of the United States and Oklahoma constitutions because the Act is unconstitutionally vague; (3) Okla. Const. Art. 5 § 46 because the Act is a "special law"; (4) Okla. Const. Art. 2, § 6 because the Act is a barrier to the courts; and (5) Okla. Const. Art. 23, § 12 because the Act violates the "exclusive purpose" rule that state pension funds must not be diverted for purposes other than the benefit of pensioners.

Since enforcement of an unconstitutional law constitutes irreparable harm,[3] and since Defendant is attempting to enforce an unconstitutional law that will cost Mr. Keenan's pension system at least $10,000,000.00, Mr. Keenan sought a temporary restraining order that was originally set for hearing on December 1, 2023, at 1:30 p.m.  *See*: *Joint Notice of Removal*, at Ex. 1 [Dkt. 1].  However, two days before the originally scheduled temporary restraining order hearing, counsel for Defendant[4] sought an emergency hearing to obtain a continuance.  At no point during the hearing did Defendant[5] give any indication it would seek removal to federal court or do anything other than appear

---

[3] *See e.g., Public Service Co. of Oklahoma v. Duncan Public Authority,* 2011 OK CIV APP 15, 248 P.3d 400 (Okla.Civ.App.2010); *see also, Elrod v. Burns*, 427 U.S. 247, 373 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).
[4] Counsel for the State was present as well.
[5] Nor did counsel for the State give any contrary indication.

at a resetting of the hearing.[6]  Consequently, the same was reset for December 15, 2023, at 10:00 a.m.  *See*: Id.

Mr. Keenan sought to ensure that Defendant would appear at the TRO hearing on December 15th. Accordingly, Mr. Keenan sought confirmation from Defendant's counsel that Defendant would in fact appear at the scheduled hearing, and on December 1, 2023, Defendant's counsel responded: "***I confirm my agreement to have Treasurer Russ at the hearing on the 15th***."  *See*: Email attached as Exhibit "1" (emphasis supplied).

Further, while Mr. Keenan asserts that the Act is unconstitutional pursuant to federal law, the majority of Mr. Keenan's allegations pertain to unconstitutionality under state law. *See e.g.*, *Motion for Temporary Restraining Order and/or Motion for Temporary Injunction*, at pp. 2-3 (citing to Okla. Const. Art. 2, § 6, Okla. Const. Art. 5, § 46, and Okla. Const. Art. 23, § 12).

It is abundantly clear that Defendant is doing all that he can to delay these proceedings because Defendant knows that the Act is riddled with constitutional infirmities.  Such procedural gamesmanship should not be permitted, and Mr. Keenan respectfully requests that this Court expeditiously remand this matter in its entirety or sever Mr. Keenan's state law claims and stay the pending federal claims so that his state-level constitutional rights may be vindicated.

---

[6] Mr. Keenan's counsel has ordered a transcript of these proceedings and will supplement the same if necessary.  However, due to the time sensitive nature of the issues presented, the transcript is not ready as of this filing.

## ARGUMENT AND AUTHORITIES

**PROPOSITION I. DEFENDANT WAIVED HIS RIGHT TO REMOVAL BY AFFIRMING HIS PRESENCE AT THE DECEMBER 15TH HEARING.**

"Generally, a defendant waives removal 'by taking some substantial offensive or defensive action in the state court action *indicating a willingness to litigate in that tribunal* before filing a notice of removal with the federal court.'" *City of Albuquerque v. Soto Enterprises, Inc.*, 864 F.3d 1089, 1098 (10th Cir.2017)(citation omitted)(emphasis supplied). Here, Defendant unquestionably indicated a willingness to litigate in state court.

*First*, Defendant's counsel appeared before Oklahoma County District Judge Sheila Stinson on November 29, 2023, and affirmatively sought relief in state court by seeking a continuance of the temporary restraining order hearing. *Then,* Defendant confirmed via email the parties had reached an "*agreement* to have Treasurer Russ at the hearing on the 15th." *See*: Exhibit "1" (emphasis supplied). Finally, Defendant never indicated or insinuated in any way, shape, or form that Defendant would be seeking removal of this action.

In *Chicago Title & Trust Co. v. Whitney Stores, Inc.*, 583 F.Supp. 575 (N.D.Ill.1984), the plaintiff's forcible entry and detainer action was removed by the defendant. *See: Id.*, at 576. However, the defendant had appeared and pled in state court. *See: Id.* Consequently, the court found that the defendant "had indeed elected to proceed in state court *by obtaining an agreed continuance of its trial without stating its intent to trigger removal in the interim*." *Id.* (Emphasis supplied.) While the court acknowledged that "a party's waiver of its right to remove generally depends on its intend to do so[,]" it

is also "clear, however, that an inadvertent waiver of the defendant's right to remove can occur by his taking certain acts in state court that are deemed to constitute a submission to its jurisdiction."   *Id*., at 577 (citing *Bedell v. H.R.C., Ltd*., 522 F.Supp. 732, 737 (E.D.Ky.1981)).   Thus, "[w]hen removal becomes available as a case proceeds to trial, *Waldron v. Skelly Oil Co*., 101 F.Supp. 425 (E.D.Mo.1951) applies the general (albeit harsh) requirement **that intention to remove be voiced immediately**." *Id*. (Emphasis supplied.)   As a result of the defendant "[seeking] and receiv[ing] a continuance without notifying [plaintiff] and the state court that it would act to remove the case in the meantime," the court found that defendant waived its right to remove the action. *See: Id.,* at 577-78.

The result should be no different here. Defendant's request for a continuance of the temporary restraining order hearing two days before trial and without mention of removal prior to its resetting on December 15, 2023, and subsequent "agreement to have Treasurer Russ at the hearing on the 15th" could not be a clearer "willingness to litigate in" Oklahoma County District Court.   Therefore, this matter should be remanded.

**PROPOSITION II.** **MR. KEENAN'S STATE LAW CLAIMS SHOULD BE SEVERED.**

Defendant premises removal on federal question jurisdiction pursuant to 28 U.S.C. § 1331.  28 U.S.C. § 1441(c)(2) explains that upon removal of an action involving federal question jurisdiction, "the district court shall sever from the action all claims [not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute] and shall remand the severed claims to the State court from which

the action was removed."  Mr. Keenan asserted at least four (4) state-level constitutional

violations, one of which, Defendant's violation of Okla. Const. Art. 23, § 12, is assuredly

severable.  Accordingly, Mr. Keenan requests that this Court sever the state-level claims.

### A.     THE ROLE OF §1441(C)(2).

In cases involving both federal claims and state-law claims, "§1441(c)(2) allows the

federal claims to be removed while the state-law claims are severed and sent back to state

court."  *Home Depot U.S.A., Inc. v. Jackson,* 587 U.S.____, 139 S.Ct. 1743, 1753, 204

L.Ed.2d 34 (2019)(J.Alito, Dissent).  In order for §1441(c)(2) to apply, the state-law claims

must not be within the "supplemental jurisdiction of the district court. . . ."  28 U.S.C. §

1441(c)(1)(B).  Therefore, the question becomes: Do Mr. Keenan's state-law claims fall

within the Court's supplemental jurisdiction?  Mr. Keenan asserts they do not; or, to the

extent they do, the Court should decline jurisdiction over the same.

### B.     SUPPLEMENTAL JURISDICTION.

28 U.S.C. § 1367(a) explains that "district courts shall have supplemental

jurisdiction over all claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the

United States Constitution."  While a "'claim is part of the same case or controversy if it

derives from a common nucleus of operative fact,'" the "'Supreme Court repeatedly has

determined that supplemental jurisdiction is not a matter of the litigants' right, but of

judicial discretion,'" and "'district courts may decline to exercise supplemental

jurisdiction.'" *Warming Trends, L.L.C. v. Flame DesignZ, L.L.C.*, 2023 WL 196288 (citing

*Price v. Wolford,* 608 F.3d 698, 702-03 (10th Cir.2010) and *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir.2004)).

In the case at bar, it is true that the Act is the source for each of Mr. Keenan's claims. However, it is not true that the same facts or law apply in the analysis of Mr. Keenan's claims with respect to the Act. For example, in order to prove Mr. Keenan's Okla. Const. Art. 23, § 12 claim, Mr. Keenan must provide evidence regarding the Act's effect upon the pension systems. But, to prove Mr. Keenan's First Amendment claims, Mr. Keenan need not refer to the pension systems at all. Thus, the factual and legal arguments between Mr. Keenan's state-level claims and federal claims are separate and distinct. That is why 28 U.S.C. § 1367(c) permits this Court to decline supplemental jurisdiction.

28 U.S.C. § 1367(c) allows a court to decline supplemental jurisdiction over a claim for four reasons:

> 1. the claim raises a novel or complex issue of State law,
> 2. the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> 3. the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

According to *Favela v. City of Las Cruces ex rel. Las Cruces Police Department*, 431 F.Supp.3d 1255, 1272 (D.N.Mex.2020), "***a district court should usually decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c) applies***." (Emphasis supplied.) Mr. Keenan's state law claims raise "novel or complex issue[s] of State law," "substantially predominate" over the claims before this Court, and provide an "exceptional circumstance" justifying severance.

8

First, the Act was passed by the Oklahoma legislature and impacts Oklahoma citizens and retirees.   Second, the Act was specifically passed in order to "protect 27 percent of *Oklahoma's economy*[7] [from] the practice of [Environmental, Social, and Governance initiatives]."   *See*: Testimony of Oklahoma Corporation Commissioner, and author of the Act, Kim David attached as Exhibit "2."   Third, Mr. Keenan's state claims involve unique aspects of Oklahoma constitutional law that justify severance and that are not parallel in terms of facts or law.   Given the unique nature of this case and its impact upon Oklahoma citizens, judicial discretion in favor of judicial economy and comity should prevail.

For example, the Act violates Okla. Const. Art. 23, § 12, which provides as follows:

> All the proceeds, assets and income of any public retirement system administered by an agency of the State of Oklahoma shall be held, invested, or disbursed as provided for by law as in trust for the exclusive purpose of providing for benefits, refunds, investment management, and administrative expenses of the individual public retirement system, and shall not be encumbered for or diverted to any other purposes.

Section 12 is clearly a unique section of Oklahoma constitutional law that pertains to Oklahoma dollars being spent on Oklahoma employees who served the State of Oklahoma. Mr. Keenan's question - whether the Act violates §12's "exclusive purpose" provision - should be determined by Oklahoma courts as proven by *Baker v. Oklahoma Firefighters Pension and Retirement System,* 1986 OK 8, 718 P.2d 348 (Okla.1986).

In *Baker*, the Western District of Oklahoma issued two certified questions to the Oklahoma Supreme Court.   *See*: *Baker*, at 349.   Both questions centered on Oklahoma's

---

[7] Not the federal economy.

pension systems and their functions.  *See*: *Id*., at 350.  Were this Court to retain this matter, it would likely be compelled to seek certified questions as occurred in *Baker*. It would seem, then, a prudent use of judicial resources to avoid that unnecessary process and simply sever the state-level claims so that the state court can make the first instance determination of state-level law.

In *Favela*, *supra*, the court went through a lengthy analysis of what constitutes a novel issue of law because the Tenth Circuit has yet to clearly define the same.  *See: Favela*, at 1273-75. In its analysis, the court cited to *Anglemyer v. Hamilton County Hospital*, 58 F.3d 533 (10th Cir.1995), wherein the Tenth Circuit affirmed the district court's dismissal of pendent state law claims that related to the Kansas Risk Management Act.  In affirming the dismissal, the court stated: "We believe the Kansas courts are the appropriate forum to decide this novel and complex issue of state law." *Anglemyer*, at 541.  If a question of law involving a state statute is novel, then certainly a question of law involving a state constitutional provision is novel, especially when the law being challenged is barely a year old.

The *Favela* court ultimately dismissed the state law claims.  *See: Favela*, at 1279-80 (*citing United Mine Workers of America v. Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130 ("***Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law***.")(emphasis supplied)).  In so doing, the *Favela* court created its own test for "novelty" and asked: (1) Is the law new? (2) Does the law concern a notable state matter? *See: Id*., at 1276.  Applying those factors to the case at bar: The Act at issue is new, as it only went into

effect last year.  Second, the law certainly concerns a notable state matter: Namely every state pension system and its participants and beneficiaries.

Judicial economy in this novel circumstance is especially warranted because Mr. Keenan's federal and state constitutional claims are not parallel (i.e., different facts and law are necessary to prove each claim).  And since "courts should avoid deciding constitutional issues where narrower grounds for a decision exist,"[8] as a matter of judicial economy, this Court could (and should) stay all pending federal claims in order to allow the state law claims to proceed in Oklahoma state court.  By doing so, Oklahoma courts would have the ability to make the first instance determination of state law claims; and if those claims fail, then the federal claims could move forward.  Thus, judicial economy is promoted by severing the state law claims.

## **CONCLUSION**

WHEREFORE, Plaintiff, Don Keenan, prays that this Court remand this matter to state court in its totality; or, in the alternative, sever Mr. Keenan's state law claims and stay these federal proceedings pending the outcome of the state law claims.  Mr. Keenan further prays for any and all other relief to which he may be entitled by law or equity, including an award of attorney fees and costs.

---

[8] *Cummings v. ConGlobal Industries, Inc.,* 2008 WL 4613817, *3 (citing *United States v. Gonzales*, 150 F.3d 1246, 1254 (10th Cir.1998); *McKenzie v. Renberg's Inc*., 94 F.3d 1478, 1488 n. 11 (10th Cir.1996); and *United States v. Martinez*, 978 F.Supp. 1442, 1452 n. 6 (D.N.M.1997)).

Respectfully submitted,


By:  /s/ Collin R. Walke
COLLIN R. WALKE, OBA #22328
HALL ESTILL
100 North Broadway Ave.
Oklahoma City, OK 73102
Telephone: (405) 553-2322
Facsimile: (405) 553-2855
Email: cwalke@hallestill.com
**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2023, a true and correct copy of the foregoing document was served upon Defendants' counsel by the Western District of Oklahoma ECF System.


/s/ Collin R. Walke
COLLIN R. WALKE