## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **1. Don Keenan,** | |
| Plaintiff**,** | |
| **v.** | **Case No. 23-CIV-1121-D** |
| **2. Todd Russ,** in his capacity as the Treasurer of the State of Oklahoma | |
| Defendant**.** | |

## Defendant's Response to Plaintiff's Motion for Temporary Restraining Order and/or Motion for Temporary Injunction

Cheryl Plaxico OBA No. 4499
**PLAXICO LAW FIRM PLLC**

Mailing Address:
P.O. Box 298
Oklahoma City, Oklahoma 73101

Midtown OKC Office:
923 N. Robinson Ave., 5th Floor
Oklahoma City, Oklahoma 73102
Telephone: (405) 209-7565
Email: cplaxico@plaxico.law

**ATTORNEYS FOR DEFENDANT**

i

## TABLE OF CONTENTS

Introduction ............................................................................................................... 2

Arguments and Authorities ........................................................................................ 5

I.   Plaintiff is not likely to prevail upon the merits of the action. .................................. 7

   A.   Economic boycotts of an energy company are not speech or expressive conduct. 9

   B.   The Act does not compel speech and is not viewpoint- or content-discriminatory.
        16

II.   Plaintiff will not suffer irreparable harm in the absence of injunctive relief. ............ 18

III.   The balance of harms and the public interest leans in favor of denying Plaintiff

Keenan's Motion. ....................................................................................................... 19

   Conclusion ............................................................................................................. 20

Certificate Of Service ............................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*A&R Eng'g and Testing Inc. v. City of Houston*, 582 F.Supp.3d 415 (S.D. Tex. 2022).8, 9

*Abdullah v. Paxton*, 65 F.4th 204 (5th Cir. 2023) .................................................. 13, 14, 15

*Amawi v. Pflugerville Indep. Sch. Dist.*, 373 F.Supp.3d 717 (W.D. Tex. 2019)............. 8, 9

*Aposhian v. Barr*, 958 F.3d 969 (10th Cir. 2020).......................................................... 6, 19

*Arkansas Times LP v. Waldrip as Trustee of University of Arkansas Board of Trustees*, 37
    F.4th 1386 (8th Cir. 2022) ......................................................... 9, 10, 11, 12, 13, 16, 17

*Booker v. State*, 335 Ark. 316, 984 S.W.2d 16 (1998)....................................................... 10

*Choctaw Pressed Brick Co. v. Townsend*, 1925 OK 153, 108 Okla. 235, 236 P. 46........ 19

*Citizens for Const. Integrity v. United States*, 70 F.4th 1289 (10th Cir. 2023)................. 19

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256 (10th Cir.
    2004) ......................................................................................................................... 6, 7

*EOG Res. Mktg., Inc. v. Oklahoma State Bd. of Equalization,* 2008 OK 95, ¶ 13, 196 P.3d
    511........................................................................................................................... 10

*First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136 (10th Cir. 2017)...................... 18

*Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222 (10th Cir. 2007) .................... 6

*Gillmor v. Thomas*, 490 F.3d 791 (10th Cir. 2007) ........................................................ 10

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 126 S. Ct.
    1211, 163 L. Ed. 2d 1017 (2006))................................................................................. 6

*Heideman v. S. Salt Lake City*, 348 F.3d 1182 (10th Cir. 2003) ...................................... 20

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013) .............................. 7

*Institute for Just. v. Laster*, 2020 WL 4018290 (W.D. Okla. July 16, 2020)..................... 6

*Jordahl v. Brnovich*, 336 F.Supp.3d 1016 (D. Ariz. 2018) ....................................... 8, 9, 18

*Koontz v. Watson*, 283 F.Supp.3d 1007 (D. Kan. 2018) .............................. 8, 9, 16, 17, 18

*Martin v. Wrigley*, 540 F.Supp.3d 1220 (N.D. Ga. 2021)............................................... 8, 9

*NAACP v. Claiborne Hardware*, 458 U.S. 886, 102 S. Ct. 3409, 73 L.Ed.2d 1215 (1982)

.................................................................................................................................... 9, 17

*Nken v. Holder*, 556 U.S. 418, 129 S. Ct. 1749, 1762, 173 L. Ed. 2d 550 (2009) ........ 6, 19

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 342 F.3d 1170 (10th Cir.

2003) .................................................................................................................................. 6, 7

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973 (10th Cir.

2004) ..................................................................................................................................... 6

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc. (FAIR)*, 547 U.S. 47, 126 S.

Ct. 1297, 164 L. Ed. 2d 156 (2006) ...................................................................... 9, 11, 12

*Schrier v. Univ. Of Co.*, 427 F.3d 1253 (10th Cir. 2005). ................................................... 7

*Sierra Club v. State ex rel. Oklahoma Tax Comm'n*, 2017 OK 83, 405 P.3d 691 ...... 11, 12

*Southon v. Okla. Tire Recyclers LLC*, 2019 OK 37, 443 P.3d 566 ................................... 13

*Stevens v. Fox*, 2016 OK 106, 383 P.3d 269, 271 ............................................................... 3

*Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 207 L. Ed. 2d 85 (2020) ................................... 2

*Verlo v. Martinez*, 820 F.3d 1113 (10th Cir. 2016)............................................................. 7

*Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 105 S.Ct. 11, 82 L.Ed.2d

908 (1984).......................................................................................................................... 20

*White v. Wint,* 1981 OK 154, 638 P.2d 1109 ................................................................... 11

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)

................................................................................................................................................. 19

**Statutes**

Kan. Stat. § 75-3740f ................................................................................................. 8, 16

Okla. Stat. tit. 74 § 12002(D) ................................................................................... 4, 14

Okla. Stat. tit. 74 § 12002(A) ................................................................................. 10, 12

Okla. Stat. tit. 74 § 12003(A) ......................................................................................... 3

Okla. Stat. tit. 74 § 12003(C) ..................................................................................... 3, 4

Okla. Stat. tit. 74 § 12003(F) ................................................................................... 4, 14

Okla. Stat. tit. 74 § 909.1(A) ......................................................................................... 3

Okla. Stat. tit. 74, §§ 901–935 ..................................................................................... 2

Okla. Stat. tit. 74, §§ 935.1–935.11 ............................................................................. 3

**Other Authorities**

Oklahoma House News Release, 05/10/2022 ................................................................ 12

## Defendant's Response to Plaintiff's Motion for Temporary Restraining Order and/or Motion for Temporary Injunction

Defendant Todd Russ, in his capacity as Treasurer of the State of Oklahoma ("Treasurer"), objects to and submits his Response to Plaintiff Don Keenan's ("Plaintiff") Motion for a Temporary Restraining Order and/or Motion for Temporary Injunction ("Motion for TRO"). As demonstrated below, Plaintiff lacks not only standing to bring the action but also fails to demonstrate that he could prevail on the merits of the underlying action since Plaintiff's claims lack even colorable merit. Plaintiff's Motion for TRO should be denied[1].

## Introduction

Like most states, Oklahoma has created programs to provide income for state employees after they retire, *e.g.*, Title 74, Sections 901–935 of the Oklahoma Statutes (governing the Oklahoma Public Employees Retirement System ("OPERS")). Generally, retirement programs provide income based on investments in securities (whether stocks or bonds). Retirement programs like OPERS commonly offer employees either defined-benefit plans or defined-contribution plans. In a defined-benefit plan, the retiree "receive[s] a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618, 207 L. Ed. 2d 85 (2020). Effective November 2014, OPERS shifted from providing defined-benefit plans to most new employees to primarily defined-

---

[1] Defendant filed a Motion to Dismiss on December 15, 2023. By responding to Plaintiff's Motion for Temporary Injunction, Defendant is not waiving his arguments in the Motion to Dismiss.

contribution plans. *See* Okla. Stat. tit. 74, §§ 935.1–935.11; *Stevens v. Fox*, 2016 OK 106, ¶ 3, 383 P.3d 269, 271.

Regardless of the structure of the plan from the beneficiary's perspective, the OPERS Board of Trustees is required to "discharge their duties…solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries…." Okla. Stat. tit. 74 § 909.1(A). As a creature of statutory promulgation, OPERS is a public, governmental entity subject to the oversight of the Oklahoma Legislature.

In 2022, the Oklahoma Legislature enacted the Energy Discrimination Elimination Act, Okla. Stat. tit. 74, § 12001–12006 (the "Act"). The Act is the Legislature's decision that a "State governmental entity" — relevant here, OPERS and other entities maintaining state retirement systems — should generally decline to invest in companies that boycott the oil and energy industries. Accordingly, the Oklahoma State Treasurer is required to maintain and provide to the retirement systems a list of companies that boycott energy companies. Okla. Stat. tit. 74 § 12003(A)(1). The Treasurer must update the list periodically, file it with the presiding officer of each house of the Legislature, provide it to the Attorney General, and post it on a publicly available website. *Id.* at (A)(3)–(4). After the retirement system receives the updated list, it must send a written notice to any listed companies informing them of the listing, warning that they may become subject to divestment, and offering the company the opportunity to clarify its activities related to the energy companies. *Id.* at (C)(1). The company then has ninety days to cease boycotting the energy company or risk being subject to divestment. *Id.* at (C)(2)–(3). If the company fails to cease

3

its boycott, then the retirement system — OPERS, here — may be required to "sell, redeem, divest, or withdraw all publicly traded securities of the financial company," unless such divesture would harm the plan and, therefore, its participants. *Id*. at (C)(4).

The Legislature provided several safeguards to ensure this policy does not harm state employees. *First*, a state governmental entity "shall not be subject to any requirement of this act if [it] determines that such requirement would be inconsistent with its fiduciary responsibility with respect to the investment of entity assets" or any other "duties imposed by law relating to the investment of entity assets." *Id*. at § 12002(D)(3). *Second*, any entity "may cease divesting" from the listed companies if the entity "has suffered or will suffer a loss in the value of assets under management by the [entity] as a result of having to divest from listed financial companies." *Id*. at § 12003(F)(1)(a). *Third*, an entity may also cease divesting if "an individual portfolio that uses a benchmark-aware strategy would be subject to an aggregate expected deviation from its benchmark as a result of having to divest from listed financial companies." *Id*. at (F)(1)(b).

Any retirement system wanting to take advantage of these exceptions is required to provide "a written report to the Treasurer, the presiding officer of each house of the Legislature, and the Attorney General setting forth the reason and justification…for deciding to cease divestment or to remain invested in a listed financial company." *Id*. at (F)(3).

According to a Reuters study, there are at least 44 bills or new laws across 17 states that penalize or discourage companies from taking a stance on gun control, climate change,

or other social and political issues.[2] To date, **37 states** have laws, statutes, executive orders, or resolutions designed to discourage boycotts against Israel.[3]

## Arguments and Authorities

As stated in Defendant's Motion to Dismiss,[4] this Court need not reach any of the issues raised in Plaintiff's Motion, as he lacks standing to bring the action. However, should the Court find its jurisdiction proper, Plaintiff nevertheless fails to sufficiently support his Motion for Temporary Restraining Order in a manner that makes Plaintiff likely to succeed on the merits. For instance, Plaintiff has not suffered — or even alleged — any injury that has occurred or is likely to occur. Plaintiff is not being compelled to speak by the Act. Plaintiff has not alleged that his conduct or expression is being discriminated against by the Act, whether via content or viewpoint. And Plaintiff is not suffering pecuniary damages because of the Act. Outside of conclusory allegations of a variety of constitutional violations, Plaintiff provides no facts sufficient to show a likelihood of success on any one of his claims.

Plaintiff must meet four criteria for injunctive relief to be granted: (1) that he is likely to succeed on the merits of his claim; (2) that he will suffer irreparable harm if the relief is denied; (3) that his harm will outweigh the harm suffered by other entities if the injunctive

---

[2] "*Insight: How Republican-led states are targeting Wall Street with 'anti-woke' laws*," REUTERS, July 6, 2022, (https://www.reuters.com/world/us/how-republican-led-states-are-targeting-wall-street-with-anti-woke-laws-2022-07-06/) (last visited 11/29/2023).

[3] "*Anti-Semitism: State Anti-BDS Legislation*," Jewish Virtual Library, (https://www.jewishvirtuallibrary.org/anti-bds-legislation) (last visited 11/29/2023).

[4] Incorporated by reference herein.

relief is granted; and (4) that his injunctive relief will advance public policy concerns. *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020) (quoting *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). When the government is the party that is being restrained, the third and fourth factors — "assessing the harm to the opposing party and weighing the public interest" — are merged. *Nken v. Holder*, 556 U.S. 418, 435, 129 S. Ct. 1749, 1762, 173 L. Ed. 2d 550 (2009). "[B]ecause a preliminary injunction is an extraordinary remedy, the [movant's] right to relief must be clear and unequivocal." *Aposhian*, 958 F.3d at 978 (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004)) (alterations in original). Plaintiff fails to establish each element.

Additionally, the Tenth Circuit has found three situations warranting a heightened standard for issuing an injunction: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Institute for Just. v. Laster*, 2020 WL 4018290 (W.D. Okla. July 16, 2020) (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 342 F.3d 1170 (10th Cir. 2003), *on reh'g en banc*, 389 F.3d 973 (10th Cir. 2004), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 126 S. Ct. 1211, 163 L. Ed. 2d 1017 (2006)). Due to injunctive relief being "specifically disfavored" in these circumstances, courts must "closely scrutinize whether a party is entitled to a preliminary injunction in these" instances. *Id*. (quoting *O Centro*, 389 F.3d at 975 (10th Cir. 2004)). For claims arising under the context of the First Amendment, "the likelihood of success on the merits

will often be the determinative factor." *Id*.; *see Verlo v. Martinez*, 820 F.3d 1113, 1126 (10th Cir. 2016), *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013)).

The injunctive relief sought here falls into two disfavored categories: as to the first category, Plaintiff seeks to change the status quo — i.e., the companies are already on the list, and an injunction would merely keep them on the list, creating the alleged obligation to divest that Plaintiff complains of. If Plaintiff is arguing that the status quo should be the state of things prior to the enactment of the Act, then Plaintiff is seeking the second category — "mandatory relief under which the non-moving party must take affirmative action." *O Centro*, 342 F.3d at 1170 (10th Cir. 2003).

Plaintiff's request seeks to change the status quo. A preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1258–59 (10th Cir. 2005). The status quo is "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Id*. at 1260 (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001).

## I.     Plaintiff is not likely to prevail upon the merits of the action.

Plaintiff relies on five anti-boycott of Israel cases — purportedly finding legislation similar to the Act at issue here unconstitutional — to support his claims that the Act at issue here is similarly unconstitutional. Motion for TRO, p. 5, Proposition 1. On appeal, four of those five cases were overturned, vacated, remanded, or otherwise dismissed for the same reasons Plaintiff's case should be dismissed. All five statutes are still in place and require

7

substantially the same certification as was required at the time each lower court opinion was issued.

- *Koontz v. Watson*, 283 F.Supp.3d 1007 (D. Kan. 2018), found that the plaintiff had a plausible claim for the statute to be unconstitutional, as she was being compelled to sign a certification herself. Not only is the Plaintiff in this case not being asked to sign a certification, but he is also not being asked to make any representation or perform any act at all. Furthermore, the Kansas statute has since been amended to clarify enforcement in accord with the *Koontz's* decision. Kan. Stat. § 75-3740f.

- *Jordahl v. Brnovich*, 336 F.Supp.3d 1016 (D. Ariz. 2018) was vacated by the Ninth Circuit because an amendment to the challenged anti-boycott of Israel statute removed the plaintiff from the class of people affected when it exempted companies with ten or more full-time employees and contracts valued at $100,000 or more from the statute, rendering the suit moot. *Jordahl II*, 789 Fed. Appx. 589.

- *Amawi v. Pflugerville Indep. Sch. Dist.*, 373 F.Supp.3d 717 (W.D. Tex. 2019) was vacated by the Fifth Circuit because an amendment to the challenged anti-boycott of Israel statute removed the plaintiff from the class of people affected when it exempted sole-proprietorships from its coverage, rendering the suit moot. *Amawi II*, 956 F.3d 816.

- *Martin v. Wrigley*, 540 F.Supp.3d 1220 (N.D. Ga. 2021) initially dismissed the named defendants in their individual capacities on qualified immunity claims. The anti-boycott statute was then amended, which removed the plaintiff from the class of people affected by the statute by exempting companies with five or more employees and to contracts valued at $100,000. The dismissal was upheld by the Eleventh Circuit, as the plaintiff there could not show that the defendants had violated a "clearly established" constitutional right. *Martin II*, 2023 WL 4131443.

- *A&R Eng'g and Testing Inc. v. City of Houston*, 582 F.Supp.3d 415 (S.D. Tex. 2022) was vacated by the Fifth Circuit because the party at issue lacked standing at the onset of the

case, as they were unable to show that any potential harm was not "fairly traceable" to the named Defendants. *A&R Engineering and Testing II,* 72 F.4th 685.

A.  *Economic boycotts of an energy company are not speech or expressive conduct.*

Notably missing from Plaintiff's persuasive precedent is the Eighth Circuit case *Arkansas Times LP v. Waldrip as Trustee of University of Arkansas Board of Trustees*, 37 F.4th 1386 (8th Cir. 2022). *Arkansas Times* currently stands as the only circuit court decision that actually analyzes the constitutionality of the underlying anti-boycott of Israel statute.

In *Arkansas Times*, the plaintiff, a newspaper, sued for a preliminary injunction, arguing that the anti-boycott of Israel statute placed an "unconstitutional condition on the award of government contracts" and compelled speech. *Id*. at 1390. The district court dismissed the suit, holding that "economic boycotts do not implicate the First Amendment because they are neither speech nor expressive conduct." *Id*. A divided panel for the Eighth Circuit reversed, interpreting the language "prohibiting 'other actions intended to limit commercial relations with Israel' to include protected speech." *Id*. at 1390–91. The court granted rehearing *en banc*. *Id*.

In affirming the district court's dismissal, the appellate court was presented with the same split lines of authority as the courts in *Koontz*, *Jordahl*, *Amawi*, *Martin*, and *A&R Engineering* — Plaintiffs relied on *NAACP v. Claiborne Hardware*, 458 U.S. 886, 907, 102 S. Ct. 3409, 73 L.Ed.2d 1215 (1982); the State argued that *Rumsfeld v. Forum for Academic & Institutional Rights, Inc. (FAIR),* 547 U.S. 47, 126 S. Ct. 1297, 164 L. Ed. 2d 156 (2006) controlled. The court found that the case ultimately "turns on what [the Act] bans: protected

boycott-related activity, or non-expressive commercial decisions." *Arkansas Times*, 37 F.4th at 1393. Primarily in dispute was language in the statute defining a boycott as, in part, taking "other actions that are intended to limit commercial relations with Israel."[5] *Id.* Plaintiff argued the language "includes constitutionally protected activity" such as "picketing outside a business that has commercial relations with Israel." *Id.* The State argued that the statute "only prohibits non-expressive commercial decisions" that do not implicate the First Amendment. *Id.*

The *Arkansas Times* court used "standard rules of statutory interpretation" in holding that the State's reading was correct. 37 F.4th at 1393. First, the court relied on the "first and most important rule of statutory interpretation" — a statute is "presumed constitutional and all doubts are resolved in favor of constitutionality." *Id.* (quoting *Booker v. State*, 335 Ark. 316, 984 S.W.2d 16, 21 (1998)); *see United States v. Plotts*, 347 F.3d 873 (10th Cir. 2003) ("Statutes are presumed constitutional."); *Gillmor v. Thomas*, 490 F.3d 791, 798 (10th Cir. 2007) ("As a general matter, we give all statutes a presumption of constitutionality."); *EOG Res. Mktg., Inc. v. Oklahoma State Bd. of Equalization*, 2008 OK 95, ¶ 13, 196 P.3d 511, 518–19, as corrected (Oct. 24, 2008) ("A legislative act is presumed to be constitutional and will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution."). Because the plaintiff argued an interpretation of unconstitutionality, "this canon weighs heavily in favor of the State's interpretation." *Arkansas Times*, 37

---

[5] The Oklahoma Act uses similar language in its definition of "boycott energy company": "refusing to deal with, terminating business activities with, or **otherwise taking any action** that is intended to penalize, inflict economic harm on, or limit commercial relations with a company." Okla. Stat. tit. 74, § 12002(A)(1).

F.4th at 1393; *see Sierra Club v. State ex rel. Oklahoma Tax Comm'n*, 2017 OK 83, ¶ 6,

405 P.3d 691, 694 ("In considering a statute's constitutionality, a heavy burden is cast on

those challenging the legislative enactment to show its unconstitutionality.").

Next, the court used the canon of *ejusdem generis* to construe the series of actions

constituting a "boycott." *Id.*; *see also White v. Wint*, 1981 OK 154, ¶ 9, 638 P.2d 1109

("[*Ejusdem generis*], therefore, accomplishes the purpose of giving effect to both the par-

ticular and the general words, by treating the particular words as indicating the class, and

the general words as extending the provisions of the statute to everything embraced in that

class."). Here, again, the canon weighed in favor of the State's interpretation: because the

"more specific phrases before the 'other actions' provision — 'engaging in refusals to deal'

and 'terminating business activities' — relate solely to commercial activities. It follows

that the more general phrase, 'other actions,' does too." *Id*.

Finally, the circuit court looked to the legislative motive behind the anti-boycott of

Israel statute, finding it to be "primarily economic." *Id*. at 1394. The background of the

enactment "repeatedly expressed concern for the commercial viability of companies" that

boycott Israel and the overall findings "suggest a purely commercial purpose for the stat-

ute." *Id*. These findings led the court to hold that the Act only prohibited "purely commer-

cial, non-expressive conduct." *Id*. Leaning on the Supreme Court's holding in *FAIR*, the

court found that since those "commercial decisions are invisible to observers unless ex-

plained, they are not inherently expressive and do not implicate the First Amendment." *Id*.

This case turns on the same issue as in *Arkansas Times* — does the Act ban "protected

boycott-related activity, or non-expressive commercial decisions." 37 F.4th at 1392. "Every

11

presumption is to be indulged in favor of the constitutionality of a statute…unless the con-
stitutional infirmity is shown beyond a reasonable doubt." *Sierra Club*, 2017 OK 83, ¶ 6,
405 P.3d 691, 694 (citing *Calvey v. Daxon*, 2000 OK 17, ¶ 24, 997 P.2d 164, 170).

The First Amendment only protects speech or "conduct that is inherently expressive."
*Rumsfeld v. FAIR, Inc*., 547 U.S. 47, 66, 126 S.Ct. 1297 (2006). The act of "boycotting" —
insofar as that boycott consists of noncommunicative commercial activities, such as not
purchasing a product because of the activities of its maker — is neither speech nor inher-
ently expressive conduct. *See FAIR*, 547 U.S. at 62; *Arkansas Times*, 37 F.4th at 1394.
Conduct requiring explanatory speech to explain the "message" *behind* the conduct, is by
definition not inherently expressive conduct. *FAIR*, 547 U.S. at 66. As such, "requir[ing]
contractors to agree to a contract provision they would otherwise not include, [] does not
require them to publicly endorse or disseminate a message." *Arkansas Times*, 37 F.4th at
1394.

The legislators behind the Oklahoma Act were clear that the Act was promulgated to
protect the economic interests of a large portion of the Oklahoma economy. *See* Oklahoma
House News Release, 05/10/2022 (statements by the authors of the bill, stating "our econ-
omy and thousands of Oklahoma jobs are connected to the oil and gas industry" and "[o]il
and gas is the backbone of our state's economy, and it's crucial that we do all in our power
to fully support this industry."). The Act clearly states the nonexpressive, commercial con-
duct that it proscribes — refusing to deal with an energy company, terminating business
activities with an energy company, or taking other actions to economically injure energy
companies. Okla. Stat. tit. 74 § 12002(A)(1). Plaintiff himself is not prohibited from

12

expressing or not expressing any speech or conduct he would like to — likewise, the state retirement systems are not prohibited from expressing anything.

Plaintiff fails to show any concrete constitutional infirmity in the Act, much less a showing **beyond a reasonable doubt** that the Act is clearly, palpably, and plainly inconsistent with the Constitution. *Southon v. Okla. Tire Recyclers LLC*, 2019 OK 37, ¶ 8, 443 P.3d 566, 570. The contested language of the Act is effectively identical to that interpreted by the Eighth Circuit in *Arkansas Times* — although persuasive authority, the same interpretation should be applicable here, as the "taking any other action" clause in the Act follows two specific phrases relating solely to commercial activities. Finally, like in *Arkansas Times*, the legislative motive behind the Act is "primarily economic."

Like *Arkansas Times*, Plaintiff also fails to include *Abdullah v. Paxton*, 65 F.4th 204 (5th Cir. 2023) as illustrative of his claims, for good reason. *Abdullah* is the only circuit case concerning a statute that controls **public retirement systems' ability to invest in financial institutions participating in a boycott**. Each of the other anti-boycott cases cited concern statutes requiring companies to sign affirmative disclaimers that they do not and will not boycott Israel, while divestment statutes require State actors to promulgate lists of companies, provide those lists to state retirement systems, and then have those systems begin the divestment process. The procedural aspects of the Texas statute and the Oklahoma Act are effectively identical:

> In 2017, the Texas Legislature enacted Texas Government Code § 808, which is a prohibition on investment in companies that boycott the country of Israel or otherwise engage in the "BDS movement." Under § 808, the Texas Comptroller is required to maintain a list of companies that boycott Israel and provide that list to the Systems. TEX. GOV'T CODE § 808.051. The Systems are then

13

directed to "sell, redeem, divest, or withdraw all publicly traded securities of the [listed] company." *Id.* § 808.053(d). If the Systems fail to comply, the Texas Attorney General is authorized to bring an enforcement action. *Id.* § 808.102.

*Abdullah*, 65 F.4th at 207. Simply changing the target of the boycott and the entity required to maintain the list of companies results in the same statutory scheme.

The Fifth Circuit's opinion in *Abdullah*, affirming the trial court's dismissal due to lack of any cognizable injury, disposed of the plaintiff's standing with the first element: injury in fact. As here, the plaintiff was a beneficiary of a public retirement system — the Texas Employee Retirement System and the Texas County and District Retirement System. *Abdullah*, 65 F.4th at 207. As here, the plaintiff had a defined-benefit plan. *Id*. ("Notably, however, the amount [of plaintiff's benefits] will be independent of the market performance of the overall fund and any individual investment decisions made by the Systems."). As here, the plaintiff sued for declaratory relief under violations of the Freedom of Speech and Due Process. *Id*. at 208. And, as here, the plaintiff "alleged there is a realistic risk that [the Act] will cause him to suffer future economic harm," while also **not** pleading that his "payments have been reduced as a result of the divestment requirement." *Id*. at 208–09.

The plaintiff contended that the "threat of diminished future payments is sufficient to establish the injury-in-fact requirement." *Id*. at 209. The Fifth Circuit dismissed this contention, first, by looking to the statutory exceptions provided by the Act[6] and, second,

---

[6] The Texas act provides the **same exceptions** as the Oklahoma Act. Relevant entities are not subject to the Acts if: the requirement is inconsistent with the fiduciary responsibilities of the entity (74 O.S. § 12002(D)(3) & Tex. Gov. Code § 808.005); the assets under management suffer or will suffer a loss in value (74 O.S. § 12003(F)(1)(a) & Tex. Gov. Code § 808.056(a)(1)); or, if utilizing "a benchmark-aware strategy," compliance "would be subject to an aggregate expected deviation from its benchmark." (74 O.S. § 12003(F)(1)(b) & Tex. Gov. Code § 808.056(a)(2)).

14

finding that the plaintiff's defined-benefit plan makes it effectively impossible for him to suffer injury without plausibly alleging that "the Systems will not be able to pay out his benefits *at all* when he reaches retirement." *Id*.

The court then turned to the constitutional injuries the plaintiff had alleged. While recognizing that some instances of a constitutional violation may satisfy the injury-in-fact standard, a plaintiff must still "establish a violation of his own personal rights." *Abdullah*, 65 F.4th at 210. As here, plaintiff did not demonstrate that the Act "causes *him* an injury by violating his own personal Fourteenth or First Amendment rights." *Id*. On both claims — due process and First Amendment — plaintiff could not show that *his* rights were being violated. *Id*. While the plaintiff has a vested property interest in "the future payments from the Systems," he could not sufficiently plead "any credible threat to those payments." *Id*. The court also rejected the plaintiff's assertions that his claims were on behalf of violations of other's rights, "such as the companies that are on the divestment list." *Id*.

Like *Abdullah*, Plaintiff has alleged little more than a threat of future injury that "is too conjectural and hypothetical to provide Article III standing." *Id*. at 209–10. Plaintiff's facts show no danger of any loss to Plaintiff himself — whether pecuniary or constitutional — because he will always receive his monthly benefit. Plaintiff's constitutional allegations likewise "do not establish injury in fact for Article III standing." *Id*. at 210. The irreparable harm underlying Plaintiff's claim is effectively that the State may make a company choose to sign a contract containing a provision that it may not agree with.

Because Plaintiff is unable to adequately allege a non-speculative injury-in-fact, he is also unlikely to succeed on the merits of his claim. As such, the Plaintiff's request for injunctive relief should be denied.

### B. *The Act does not compel speech and is not viewpoint- or content-discriminatory.*

Like the statute at issue in *Arkansas Times*, the Act is not violative of the First Amendment. Plaintiff relies primarily on *Koontz* as illustrative of his claims, maintaining that "[s]ince the Act is copy-cat legislation, the holdings of *Koontz*…should also be copied." Plaintiff's Motion for TRO at 10. Underlying this reliance is the fact that *Koontz* is the only case Plaintiff provides that has not been vacated or reversed for reasons applicable to Plaintiff himself. Further, Plaintiff overstates the similarities between the cases. As stated, the statute complained of in *Koontz*, Kan. Stat. § 75-3740f, is currently still in force, with minor revisions to address the issues raised in *Koontz*.[7]

In *Koontz*, the plaintiff — a curriculum coach for teachers at a public school in Wichita, Kansas — was a member of the Mennonite Church organization. 283 F.Supp.3d at 1013. In 2017, the Mennonite Church USA passed a resolution calling on its members to

---

[7] Section 75-3740f (a) was amended with the following changes:

> (a) Except as provided in subsection (c), the state shall not enter into a contract with ~~an individual or~~ a company ~~to acquire or dispose of services, supplies, information technology or construction~~, unless such ~~individual or~~ company submits a written certification that such ~~individual or~~ company is not currently engaged in a boycott of **goods or services from** Israel **that constitutes an integral part of business conducted or sought to be conducted with the state**.

(~~text removed~~ | **text added**). Section 75-3740e (c) was added to set a minimum contract price of $100,000.

"take steps to redress the injustice and violence that both Palestinians and Israelis have experienced." *Id*. The *Koontz* plaintiff was asked to sign a certification confirming that she was not participating in a boycott of Israel — she refused to sign and subsequently did not apply for the waiver authorized by the statute. *Id*. at 1014.

The *Koontz* court found *Claiborne* instructive. *Claiborne* involved the boycott of white merchants by black members of the community. The Court looked at the "many forms" the boycott took — it was launched from a meeting attended by several hundred persons; its purpose was to "secure compliance" with a lengthy list of demands; the boycott was supported by speeches and picketing; and participants to the boycott repeatedly offered "encouragement to others to join their cause." *Koontz*, 283 F.Supp.3d at 1021 (quoting *Claiborne*, 458 U.S. at 907).

Importantly, both cases involved plaintiffs that were **directly impacted** by any First Amendment suppression arising under the anti-boycott statute. Further, *Claiborne* "only discussed protecting expressive activities *accompanying* a boycott, rather than the purchasing decisions at the heart of a boycott." *Arkansas Times LP v. Waldrip as Tr. of Univ. of Arkansas Bd. of Trustees*, 37 F.4th 1386, 1392 (8th Cir. 2022).

These expressive components are not present in the case at hand. Keenan does not claim that he is being compelled to express any message at all. Keenan does not claim that he will have been denied "rights to equal treatment and respect", as in *Claiborne*. 458 U.S. at 907. Keenan does not claim to be expressing his "dissatisfaction with [energy companies] and to influence governmental action", as in *Koontz*. 283 F.Supp.3d at 1022. Keenan does not even claim to be associated with any company subject to the anti-boycott

17

provisions of the Act. Nor does Keenan claim that the Act suppresses any of *his* expressive activities of any kind, much less activities accompanying a boycott of the energy industry.

## II.   Plaintiff will not suffer irreparable harm in the absence of injunctive relief.

Plaintiff has not, will not, and *cannot* suffer any damage as a result of the Act. The Act does not implicate the First Amendment and is not violative of the Oklahoma Constitution. As illustrated by the *Koontz* court and relied upon by Plaintiff, any alleged "harm stems not from her decision to refuse to sign the certification, but rather from the plainly unconstitutional **choice** the [Act] forces plaintiff to make: She either can contract with the state or she can support a boycott of Israel." Plaintiff's Motion for TRO at 9; *Koontz*, 283 F.Supp.3d at 1024.

Plaintiff, however, is not being forced to do anything at all — Plaintiff is not attempting to contract with the state; Plaintiff is not being asked to sign the certification to continue receiving his benefits; Plaintiff does not have to refrain from boycotting the energy industry to continue receiving his benefits; and Plaintiff has not alleged **any** burden on **any** "expressive conduct that … is political in nature." *Jordahl v. Brnovich*, 336 F.Supp.3d 1016 (D. Az. 2018).

Any alleged harm that Plaintiff claims may occur is also insufficient to rise to the level of irreparable harms under the factors for injunctive relief. Plaintiff "must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017). Plaintiff's basis for his present suit is "the financial devastation that

would be wreaked by divesting from the current fund managers" — even momentarily disregarding that the alleged "financial devastation" would be suffered by *two parties that are not Plaintiff* — financial harms, by definition, are compensable with money damages. Verified Petition, ¶ 10.

### III.  The balance of harms and the public interest leans in favor of denying Plaintiff Keenan's Motion.

When the party opposing the preliminary injunction is the government, "the third and fourth factors 'merge'." *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020) (citing *Nken*, 556 U.S. at 435, 129 S. Ct. 1749). For a temporary injunction to be proper, plaintiff must demonstrate that "the threatened injury outweighs the harms that the preliminary injunction may cause the opposing party." *Id.* at 978. Further, the plaintiff must show the "injunction, if issued, will not adversely affect the public interest." *Id*.

The "state itself cannot be enjoined" — however, state officials "acting in an unconstitutional or otherwise illegal manner to the pecuniary detriment of private citizens…may be enjoined." *Choctaw Pressed Brick Co. v. Townsend*, 1925 OK 153, 108 Okla. 235, 236 P. 46. It is the burden of the party seeking injunctive relief to demonstrate that the factors justifying relief are met. *See Citizens for Const. Integrity v. United States*, 70 F.4th 1289, 1293 (10th Cir. 2023) ("A plaintiff seeking a preliminary injunction must establish that he is likely to" satisfy the four-factor test.) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

Further, when it is a State statute that is sought to be enjoined, the "presumption of constitutionality which attaches…is not merely a factor to be considered in evaluating

19

success on the merits, but an equity to be considered in favor" of the State in the balance of hardships. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1191 (10th Cir. 2003) (quoting *Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324, 105 S.Ct. 11, 82 L.Ed.2d 908 (1984) (regarding Acts of Congress). The *Heideman* court, while interpreting a city ordinance, held that "the presumption of constitutionality accorded a municipal ordinance is less than that accorded an Act of Congress…the ability of a city to enact and enforce measures it deems to be in the public interest is still an equity to be considered in balancing hardships." *Id*.

Plaintiff fails to allege sufficient evidence that any harm will come to him, in any way. As such, the balance of harms tips in favor of denying injunctive relief against Defendant. The State itself "cannot be enjoined," and Plaintiff has not clearly and convincingly proved that the Treasurer will be "acting in an unconstitutional or otherwise illegal manner to the pecuniary detriment" of any person or entity.

## Conclusion

For the reasons discussed above, Plaintiff Don Keenan has unsuccessfully alleged facts enough to establish by clear and convincing evidence each criterion for injunctive relief, including failing to show that he is likely to succeed on the merits of his claim, failing to show that he will suffer any harm if the relief is not granted, and failing to show that his speculative harms outweigh the harms to Defendant, or that public policy will be advanced by injunctive relief. Accordingly, the Court should DENY the Plaintiff's Motion for Temporary Restraining Order and/or Motion for Temporary Injunction.

Respectfully submitted,

**PLAXICO LAW FIRM PLLC**

/s/ Cheryl Plaxico

Cheryl Plaxico OBA No. 4499

Mailing Address:
P.O. Box 298
Oklahoma City, Oklahoma 73101

Midtown OKC Office:
923 N. Robinson Ave., 5th Floor
Oklahoma City, Oklahoma 73102
Telephone: (405) 209-7565
Email: cplaxico@plaxico.law

**ATTORNEYS FOR DEFENDANT**

## Certificate Of Service

I hereby certify that on the 15th day of December, 2023, a true and correct copy of

the foregoing was sent via ECF filing to:

Collin R. Walke, OBA #22328
Hall Estill
100 N. Broadway, Suite 2900
Oklahoma City, Oklahoma 73102
(405) 553-2322
(405) 553-2388
cwalke@hallestill.com
ATTORNEY FOR PLAINTIFF

/s/ Cheryl Plaxico

Cheryl Plaxico

22